Sandra YOUNG, Plaintiff

v.

CITY OF ALLENTOWN, Defendant.

Civ. A. No. 93–2609.

United States District Court,
E.D. Pennsylvania.

March 21, 1995.

Sandra Young, Allentown, PA, pro se.

Kathryn Wohlsen Mayer, Asst. City Sol., Patricia A. Siemiontkowski, Asst. City Sol., Allentown, PA, for defendant.

## AMENDED MEMORANDUM AND ORDER

HUYETT, District Judge.

The City of Allentown ("Defendant" or "City") has moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b). For the reasons discussed below, the Court will grant Defendant's motion and dismiss Plaintiff's complaint in its entirety.

## I. BACKGROUND

Sandra Young ("Plaintiff"), proceeding *pro se*, began this action by filing a complaint on May 17, 1993, naming the Police Department of the City of Allentown, PA. as Defendant.[1] Ms. Young's one page complaint, together with a one page document entitled "Amendment," alleged the Allentown Police illegally searched her car, thereby damaging it, and, from April 15 to May 31, 1991, harassed her "everytime [sic] [she] was in [her] car," causing her to "junk" the vehicle. The Court granted Ms. Young leave to proceed *in forma pauperis* on June 18, 1993, but dismissed her initial complaint without prejudice on July 20. Dismissal was required because the Allentown Police Department does not exist as an entity separate from the City of Allentown and, therefore, was not a proper defendant. The City filed a motion to quash service or dismiss on July 26, 1993 which was withdrawn as moot.

In the Order dismissing the complaint, the Court allowed Young twenty days in which to file a new complaint and instructed "[s]hould Plaintiff choose to file a new complaint, she should name the city of Allentown as Defendant and state with more specificity when and where the events took place, what happened, and the identity of the officers involved."

Young filed a document with the district court entitled "Appeal" on July 28, 1993, which recounted her difficulties in finding counsel willing to represent her but which had no relevance to the action at that time. On August 8, 1993, Young filed papers attempting to state civil rights claims on behalf of her husband, who was incarcerated. The Court treated this document as a new complaint and dismissed it without prejudice on November 1, 1993, stating "a plaintiff may only assert his or her own constitutional rights" and "[t]herefore Sandra Young may not sue on behalf of her husband for alleged civil rights violations." During August, Ms. Young filed additional papers relating to her husband's incarceration and mailed numerous discovery requests on behalf of both her and her husband to various municipal and Pennsylvania state offices.

On October 18, 1993, the City of Allentown received a collection of documents from Sandra Young, including a new complaint marked "RE–FILE CASE # 93–CV–2609," and a new document entitled "Amendment," appended to the complaint. (For clarity, the Court will refer to these two documents together as the "Amended Complaint.") Attached to these documents was a cover letter stating:

> This is in compliance to the Judge's order of my lawsuit-Case # 93–CV–2609 against the Allentown Police Dept. I have re-filed my lawsuit and I am naming the City of Allentown as Defendants and with more specificity when and where events took place, and what happen.

Also included was a response to the City's motion to dismiss, which was virtually a verbatim copy of Young's earlier document entitled "Appeal." Ms. Young never has properly served these documents and did not file them with the Clerk until October 25, 1993. The Court dismissed Young's Amended Complaint by Order dated November 2, 1993, on grounds of lack of diversity, the alleged basis of subject matter jurisdiction over Young's cause of action. On November 4, 1993, the

---

1. The complaint and associated documents were never properly served, but were mailed to the Allentown Police Department along with a summons created by Ms. Young but not issued by the Clerk. The mailing was received on July 7, 1993. Young also filed her original complaint a second time, on July 12, 1993.

City renewed its motion to quash service or dismiss, which was once again withdrawn as moot.

On November 29, 1993, Young filed a document with the district court entitled "Appeal," objecting to the Court's Order dismissing her complaint. This document was treated as a new complaint, assigned Civil Action No. 93–4941, and dismissed for lack of subject matter jurisdiction by Order dated December 14, 1993.

Ms. Young appealed, and the Court of Appeals remanded for consideration of whether Young's complaint stated a claim which this Court has power to decide under federal question jurisdiction. *Sandra Young v. Allentown Police Department*, No. 93–2121, slip op. at 4, 30 F.3d 1489 (3rd Cir. June 15, 1994). Because, as the dissent in this opinion noted, Plaintiff Young could be made to pay the Defendant's attorney's fees if her suit is deemed to be brought pursuant

to 42 U.S.C. § 1983 and found to be frivolous, the Third Circuit stated "if Plaintiff agrees ... that we have miscast her complaint in a manner that is inconsistent with her view, she is free to seek withdrawal of her complaint in the district court." *Id.* at 4–5. Defendant City of Allentown filed the instant motion to dismiss on September 26, 1994. Plaintiff has taken no action to withdraw or voluntarily dismiss her suit.

## II. DISCUSSION

Young's allegations specifically relate to one incident, on April 12, 1991, alleged to be an illegal search of her vehicle and, the Court infers, an illegal seizure of unspecified contents of the vehicle, and five other incidents occurring on April 15, 22, and 30, and May 4 and 31, 1991.[2] Ms. Young's allegations all concern confrontations with individuals alleged to be employees of the Allentown Police department.[3] Accordingly, if Young has

---

2. The factual allegations relating to a cause of action set forth in Young's Amended Complaint are as follows:

   Defendants illegally Search [sic] my car and damage it
   . . . .
   Plaintiff Seeks to recover money damages from the defendants for: illegally searching my car and competely [sic] destroying it....
   On or about April 12, 1991, on 9th and Gordon Street, while my car was parked and unoccupied, the police illegally searched my car, illegally obtained what they called evidence, proceeded to tear my car apart....
   On of About April 15th through May 31st, Police continuously harassed me everytime [sic] I was in my car. It gotten [sic] to the point I had to junk it. On or About April 15th though [sic] May 31st, 1991, Police continuously haressed [sic] me every time I was in my car....
   Approximate dates:
   (a) 4/12/91—while trying to find out what was going on (this is the day my husband was detained) I was standing by my car parked on 9th & Gordon Street, The plain clothes detective, that I was trying to talk to told me, it was none of my business and if I did not get away that I would be going to jail with my nigger husband. Officers named on main Lawsuit [sic] of front page. And this is the only names I have because they refused to identify themselves.
   (b) 4/15/91—After picking up my car keys at the police station, a police car followed me home. I would go to get into my car there would be a cop there. If I went shopping or

any where, if I was in my car somehow the police would be there.
   (c) 4/22/91—I was driving with a passager [sic] in my car named, Anthorny [sic] Parker, I was stopped on Hanover Ave. near Beth–Lynn Sportwear. About 12:30, by at less [sic] 6 police cars, if not more. The one cop asked us for ID. I gave him, my driver license and he wrote our named [sic] down. And he made the racial remark "Oh this is Young's wife that niger [sic] from Philia". [sic] This is the only time that any police officer asked for or took my name (it was like they knew and was looking for me). And every time I was stopped and harassed by the Allentown Police, I would asked [sic] them for their name and they would refuse me.
   (d) 4/30/91—I was stopped at 12th & Chew Street, The [sic] officer asked me where I was going and was threatened by the officer in which he told me to look out for myself.
   (e) 5/4/91—While driving on 8th & Hamilton Street, two policemen standing on the corner pulled me over and told me that my inspection sticker was running out when it was not.
   (f) 5/31/91—Coming out of Acme on 16th & Allen Street I was pulled over and asked what I was doing here, and that I had no right to be here. After this I parked my car and refused to drive it again. Because I was tired of being followed, being harassed, out right being afraid of being pulled over by the Allentown Police. Finely [sic] ending up junking my car.

3. Young's Amended Complaint states "Defendants involved were: Pt.1 Timothy Salgado, Pt.1 Marcia Wister, Lt. Thomas Bennis, Officer Sago-

stated a claim within the Court's federal question jurisdiction, it would arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

■ In deciding whether to grant a motion to dismiss, the Court must accept all factual allegations contained in the complaint as true, and view any reasonable inferences that can be drawn from those allegations in the light most favorable to the plaintiff. *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3rd Cir.1985). "[A] court cannot expect a complaint to provide proof of [plaintiff's] claims, nor a proffer of all available evidence." *Frazier v. Southeastern Pennsylvania Transportation Authority,* 785 F.2d 65, 68 (3rd Cir.1986). A complaint may properly be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Wisniewski,* 759 F.2d at 273.

In civil rights cases, the Third Circuit has instructed that a plaintiff may not reasonably be expected "to be familiar at the complaint stage with the full range of the defendants' practices under challenge," but "plaintiffs may be expected to know the injuries they allegedly have suffered." *Id.* The Court notes as well that it may not "apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under ... 42 U.S.C. 1983." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Loftus v. Southeastern Pennsylvania Transportation Authority,* 843 F.Supp. 981, 982 (E.D.Pa.1994). A section 1983 complaint will survive a motion to dismiss if it "allege[s] the specific conduct violating the plaintiff's rights, the time and place of the conduct, and the identity of the responsible officials." *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3rd Cir.1988).

■ The City argues that because Ms. Young's original complaint was not filed until May 17, 1993, claims arising from all but the last incident, on May 31, 1991, are time barred.[4] The Court agrees. A statute of limitations defense may be considered within the context of a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3rd Cir.1994). "[T]he appropriate limitations period for section 1983 claim [sic] is Pennsylvania's two-year statute of limitations applicable to personal injury actions, 42 Pa.Cons. Stat.Ann. § 5524." *Bougher v. University of Pittsburgh,* 882 F.2d 74, 78 (3rd Cir.1989). Where the conduct plaintiff complains of occurred outside of the limitations period, section 1983 claims based on that conduct are barred by the statute of limitations. *Id.* at 79. Therefore, only the incident which took place on May 31, 1991 may properly form the basis of a section 1983 action against the City.

■ The City next argues that Ms. Young's complaint must be dismissed because she has failed to allege the existence of a "policy, custom, or course of conduct" which is causally connected to her alleged injury and "sufficient to state any cause of action under s. 1983." Def.'s Br. at 8.

It is well settled that municipal liability under s. 1983 "may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitu-

---

to, Pt.1 Daniel Warg, Det. Sgt. Dean Schwartz all from the Allentown Police Dept." Young alleges these officers were involved in the search and seizure incident on April 12, 1991. She has not identified any officers involved in the other incidents which form the basis of her complaint. This particular factual inadequacy is not sufficient to require dismissal of a section 1983 claim against a municipality under the standard of Fed.R.Civ.P. 8(a)(2), because Young has clearly alleged that all of the individuals involved were police officers employed by Defendant City of Allentown. *See Colburn v. Upper Darby Township,* 838 F.2d 663 (3rd Cir.1988); *Hall v. Pennsylvania State Police,* 570 F.2d 86 (3rd Cir.1978) (Complaint alleging "racially discriminatory activity" in "King of Prussia" by "various state and bank officials ... is sufficiently precise to give notice of the claims asserted....")

4. *See* Young's allegations of specific incidents listed by date *supra* note 2.

tional rights." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3rd Cir.1990) (*citing Monell v. New York City Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978)). In addition, "proof of the mere existence of an unlawful policy or custom is not enough to maintain a s. 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Id.* While the policy itself need not be unconstitutional, it must reflect, at least, a "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).

The Court agrees that Young has failed to allege the existence of a municipal policy or custom. The Third Circuit has stated:

> Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict. Custom on the other hand, can be proven by showing that a given course of conduct although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.

*Bielevicz,* 915 F.2d 845 (citations omitted). Young has not alleged that the incident that occurred on May 31, 1991 took place as the result of any policy or custom established by, or known to, responsible decisionmakers whose actions or knowledge may be attributed to the City of Allentown. Her allegations concerning the incident on May 31, 1991 relate only to conduct by the Allentown Police.

It could be argued that the mere occurrence of the incident should demonstrate that a municipal policy exists. However, this argument places Young in the same position as the plaintiff in *Oklahoma City v. Tuttle,* 471

U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791, who sought to establish the existence of a municipal policy based solely on the actions of a police officer during a single incident. In this situation, the Supreme Court stated that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (Rehnquist, C.J., plurality opinion); *see also Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3rd Cir.1995); *Colburn v. Upper Darby Township,* 838 F.2d 663, 672 (3rd Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). As Justice Brennan explained in a concurring opinion in *Tuttle:*

> "[W]ithout some evidence of a municipal policy or custom independent of the police officer's misconduct, there is no way of knowing whether the city is at fault. To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell.*"

*Tuttle,* 471 U.S. at 831, 105 S.Ct. at 2440 (Brennan, concurring).

In addition, the Court notes that to state a cause of action under section 1983, the injury plaintiff alleges must be of *constitutional* dimensions. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *accord Andrews v. City of Philadelphia* 895 F.2d 1469, 1481 (3rd Cir.1990); *Williams v. Borough of West Chester,* 891 F.2d 458, 467 (3rd Cir.1989).[5]

---

5. The only exception to this rule appears to be that a municipality may be held liable, even though the individual officer's action does not

result in a constitutional violation, where the municipal policy involved is "so likely to result in the violation of constitutional rights, that the

The precise standard used to assess whether the police have violated the constitution varies, depending on the right alleged to be violated. Claims involving the use of excessive force in a Fourth Amendment seizure context, such as an arrest or *Terry* stop, are examined under an objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Third Circuit has recently held that claims involving government action alleged to violate Fourteenth Amendment substantive due process are tested under a "shocks the conscience" standard, both "in situations where the government officials' affirmative act is the direct cause of the constitutional harm and those where harm is caused by governmental omission." *Fagan v. City of Vineland,* 22 F.3d 1296, 1304 (3rd Cir.1994).

Ms. Young's allegations concerning the events of May 31, 1991 amount to no more than that she was subjected to a routine traffic stop, which police have not only the authority but also a duty to execute. *See e.g.,* 75 Pa.C.S.A. § 3102 (obedience to authorized persons directing traffic); 75 Pa.C.S.A. § 6308 (investigation by police officers). Specifically, Young alleges:

> 5/31/91—Coming out of Acme on 16th & Allen Street I was pulled over and asked what I was doing here, and that I had no right to be here.

Pl.'s Amendment (attached to Pl.'s Compl. filed October 25, 1993). Significantly, Young does not allege that the stop was unjustified or that she was detained for an unreasonable period of time. Nothing in her allegation, either expressly or by inference, supports a belief that the conduct of the police was unreasonable or of a nature to "shock the conscience." Neither Ms. Young's person nor her vehicle were searched, she was not arrested or issued a citation, and by her own admission, the police did not even request that she produce identification or a valid driver's license. Without a factual allegation to demonstrate an attempt by the police to enforce a restraint on Plaintiff's liberty interest, the mere admonition that Young "had no right to be here," in the context of an informational motor vehicle traffic control stop, will not support a claim that the encounter with police on May 31, 1991 subjected Plaintiff to a constitutional deprivation.

It could be argued that the discrete events alleged in Young's complaint constitute a "continuing violation," which would prevent the statute of limitations from beginning to run until the last event on May 31, 1991.[6] Suspension of the statute of limitations would reinstate claims arising before May 31, 1991, and allow an argument that all six events, taken together, establish a course of conduct sufficient to demonstrate a munic-

---

policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1090 (3rd Cir.1991) (Sloviter, C.J., concurring); *Fagan v. City of Vineland,* 22 F.3d 1283, 1294 (3rd Cir.1994).

**6.** Young has not advanced this argument herself. Her documents entitled "Appeal," filed July 28, 1993, and "Answer to Kathryn Mayer's Motion to Dismiss," filed October 25, 1993 do assert what the Court interprets as an argument that the statute of limitations should be equitably tolled. They state:

> As I have been unable to get private or public help as in a attorneys [sic]. Every attorney, every association, every local county official, I have gone to [sic] seek help, takes the case for one day and then refuses me.... I have tried, and do not believe the statute of limitations should be payed [sic] attention to under these conditions. As I have been and this has been, and [sic] on going case, in trying to get proper

help for the last 2½ years. And have been denied it.

Young's allegations of prompt but unsuccessful efforts to obtain legal representation are not sufficient to invoke equitable tolling of the statute of limitations, however. The principal situations in which equitable tolling is appropriate are "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver,* 38 F.3d at 1387. Young's allegations do not suggest that the City of Allentown took any action, either intentionally or innocently, to prevent Young from asserting her rights. The mere fact that several attorneys may have initially agreed to take her case but then declined to represent her, presumably after investigating the basis of her claims, does not show that Young has been "prevented from asserting her rights" in some "extraordinary way."

ipal custom and provide a basis for the City's liability under section 1983.[7]

Assuming Plaintiff could avoid the running of the statute of limitations, Young's claims, considered together, are not sufficient to allow her Amended Complaint to survive the City's motion to. dismiss. When examined *in toto*, the claims do not demonstrate the existence of a municipal custom as is required to create a plausible allegation that the City of Allentown is liable under s. 1983.

To constitute a custom which can give rise to municipal liability, the alleged course of conduct must be "so well-settled and permanent as virtually to constitute law." *Bielevicz*, 915 F.2d at 850. The reason for this requirement is to demonstrate that "acquiescence in a well-settled custom" justifies ascribing responsibility for the custom to "municipal decisionmakers" and, consequently, to the municipality. *Id.* Young's allegations, which other than the allegedly illegal search amount to four traffic stops over a month and a half, do not establish a sufficiently identifiable and long-lasting course of conduct to constitute a municipal custom. Nothing in Young's allegations supports an inference that any responsible decisionmaker in the

City of Allentown was on notice or even had reason to suspect that Young was being stopped. The Court's conclusion that Young's allegations do not establish a municipal custom is reinforced by the fact that Young's Amended Complaint, filed over five months after the Court directed her to supplement her initial complaint, and two and one-half years after the incidents complained of, contains no additional allegations demonstrating that Ms. Young took any action to provide notice to the City of the incidents complained of, or that the alleged course of conduct extended beyond the four traffic stops during the April—May 1991 period.

## III. CONCLUSION

Municipal liability under Section 1983 requires Plaintiff to demonstrate the existence of a municipal policy or custom which is the cause of her alleged injuries. Because of Pennsylvania's two year statute of limitations, Plaintiff's only viable claim arises from the encounter with police alleged to have occurred on May 31, 1991. This event, standing alone, is inadequate to demonstrate the existence of the required municipal custom. In addition, Plaintiff could prove no set

7. The argument that a continuing violation should toll the statute of limitations is quite common in Title VII litigation. *See e.g. Bronze Shields, Inc. v. N.J. Dept. of Civil Serv.*, 667 F.2d 1074, 1061 (3rd Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982) (citing cases). The Third Circuit does not appear to have decided, however, whether the continuing violation theory should apply in the context of *Monell* municipal liability under s. 1983. *See Mancini v. Lester*, 630 F.2d 990 (3rd Cir. (1980) (the only case in which the argument appears to have been advanced, decided on other grounds). In a non-employment context, whether a plaintiff may recover damages under s. 1983 for acts occurring outside the statute of limitations depends on whether she can adequately link the time-barred acts to acts for which her complaint is timely filed. *See e.g. Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir.1989) ("[S]heriff's repeated garnishment of [plaintiff's] wages created a continuing violation of [plaintiff's] due process rights under s. 1983."); *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1103 (5th Cir.1990) (explaining continuing violation theories and distinguishing *Jackson v. Galan, supra*); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988) (Undercover police officer's claims for malicious prosecution, wrongful arrest, wrongful incarceration, and wrongful suppression of evi-

dence did not constitute continuing tort to toll statute of limitations in s. 1983 action.); *Singleton v. City of New York*, 632 F.2d 185, 191 & n. 5 (2d Cir.1980) *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) (same); *see also Rose v. Bartle*, 871 F.2d 331, 348–49 (3rd Cir.1989) (when cause of action accrues for s. 1983 action); *Smith v. Holtz*, 856 F.Supp. 227, 233 (M.D.Pa.1994) (rejecting continuing violation theory in s. 1983 action based on claims arising from trial); *c.f. Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480 (9th Cir.1989) (explaining continuing violation theories in employment context). To assert a continuing violation theory outside of the employment context, plaintiff must, at a minimum, allege at least one violation that is not barred by the statute of limitations. Because the Court holds that plaintiff could prove no set of facts that would elevate the incident alleged to have occurred on May 31, 1991 to the level of a constitutional violation, Ms. Young cannot satisfy this minimum requirement. Likewise, Young's unilateral decision to "junk" her car does not state a constitutional deprivation within the limitations period. *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.").

of facts to show that this encounter was a violation of her constitutional rights. Because the May 31st encounter does not amount to a constitutional violation, Plaintiff may not advance a continuing violation theory and assert claims based on incidents occurring outside of the limitations period. Assuming Plaintiff could avoid the statute of limitations, Plaintiff's allegations, considered *in toto,* are insufficient to establish the existence of a municipal custom causally related to Plaintiff's alleged injuries. Accordingly, the Court will dismiss Plaintiff's Amended Complaint with prejudice, in its entirety. This Memorandum and Order amends and supersedes the Memorandum and Order issued March 9, 1995.