**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 15 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HORMUZD Y. RASSAM and TECH, INC., a New Mexico corporation,

     Plaintiffs - Counterdefendants - Appellants,

v.

SAN JUAN COLLEGE BOARD; SAN JUAN COLLEGE; JAMES C. HENDERSON, individually and in his capacity as an appointed executive of San Juan College Board and as President of San Juan College; SAN JUAN COUNTY BOARD OF COUNTY COMMISSIONERS; SAN JUAN COUNTY; ROBERT E. KARLIN, individually and as a member and Chairman of the Board of County Commissioners of San Juan County; RICHARD P. CHENEY, individually and as principal of Brewer Associates, Inc.; JOHN DOE, any and all, as persons associated with one or more of the above defendants; JANE DOE, any and all, as persons associated with any of the defendants; CHENEY, WALTERS AND ECHOLS, INC.,

     Defendants - Appellees,

No. 95-2292

(D. New Mexico)

(D.C. No. CIV-92-1247-PJK/MV)

and

BREWER ASSOCIATES, INC., fka
Brewer & Associates, fka Lawrence A.
Brewer and Associates, Inc.;
LAWRENCE A. BREWER, individually
and principal of Brewer Associates, Inc.,
as a member and President of San Juan
College Board and as member of
Farmington City Council,

      Defendants - Counterclaimants -
      Appellees.

---

## ORDER AND JUDGMENT[*]

---

Before **ANDERSON**, **TACHA**, and **BALDOCK**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of this

appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered

submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs and appellants Hormuzd Y. Rassam and Tech, Inc., Mr. Rassam's architectural, engineering and planning firm, appeal the grant of summary judgment to defendants, Lawrence A. Brewer, James C. Henderson, San Juan County, Richard Cheney, Robert Karlin, Brewer Associates, Inc., and Cheney-Walters-Echols, Inc., and the consequent dismissal of plaintiffs' civil rights action. Mr. Rassam and his company alleged that defendants violated 42 U.S.C. §§ 1981, 1983, and 1985, as well various New Mexico state laws, by engaging in a conspiracy to prevent plaintiffs from receiving public contracts in San Juan County. The district court held that plaintiffs' claims were barred by the applicable statutes of limitations. We affirm.

## BACKGROUND

Mr. Rassam is a civil engineer and his company, Tech, Inc., offers architectural, engineering and planning services in San Juan County, New Mexico. Mr. Rassam was born in Iraq, but is a naturalized American citizen. He and his company have provided their services in the San Juan County area for many years. Defendants Larry Brewer and Richard Cheney own another engineering company, Brewer Associates, Inc.[1] Mr. Brewer was elected to the San Juan College Board in 1983, becoming chairman in 1986. Since 1990, he has served on the Farmington City Council and the San Juan County Water

---

[1]Mr. Brewer's and Mr. Cheney's company has apparently gone by various names: Brewer Associates, Brewer Associates, Inc. and Cheney-Walter-Echols, Inc.

Commission. Between 1984 and 1992 Mr. Cheney served in the New Mexico House of Representatives. Mr. Henderson is President of San Juan Community College. Mr. Karlin was a member of and chairman of the San Juan County Commission from 1979-82 and 1985-89.

The gist of Mr. Rassam's civil rights action is that defendants conspired over a long period of time, beginning in 1983 and continuing until the present time, to drive him and his company out of the public contract business, out of hostility towards Mr. Rassam's ethnic background, and because of Mr. Rassam's outspokenness on matters of public concern, his refusal to engage in corruption, and the "aggrandizement of various Defendants." Appellants' App. Vol. VII at 1969 (Rassam v. Brewer, No. CIV 92-1247 MV/PJK/LCS (D.N.M. filed Sept. 25, 1995),. The district court granted summary judgment, and denied plaintiffs' motion for reconsideration, on the ground that plaintiffs' claims were barred by the applicable statutes of limitations, concluding that the "uncontroverted evidence makes it clear that Dr. Rassam was aware of the conspiracy he now alleges by not later that 1987." Id. at 1977. With respect to incidents occurring during the applicable limitations period, and which plaintiffs claim established material factual disputes under a "continuing violation" theory, the district court held plaintiffs "have not produced anything other than speculation." Id. at 1984.

## DISCUSSION

We review de novo a district court decision granting summary judgment, applying the same standard as did the district court. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "'Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995)). We review the facts and the reasonable inferences therefrom in a light most favorable to the party opposing the motion (the plaintiffs in this case). Id. Additionally, while the moving party bears the initial burden of showing the absence of any genuine issues of material fact, the party opposing the motion "'may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" Id. (quoting Wolf, 50 F.3d at 796).

No one disputes that the applicable statute of limitations for a civil rights action in New Mexico is three years. See Wilson v. Garcia, 471 U.S. 261, 280 (1985); Robinson v. Maruffi, 895 F.2d 649, 654 (10th Cir. 1990); N.M. Stat. Ann. § 37-1-8.[2] "While state law

---

[2]As the district court observed, the same three-year limitations period applies to plaintiffs' claims for intentional interference with contractual relations, civil conspiracy, defamation, and intentional infliction of emotional distress. N.M. Stat. Ann. § 37-1-8. Plaintiffs' fraud claim is subject to a four-year statute of limitations. N.M. Stat. Ann.

(continued...)

governs limitations and tolling issues, federal law determines the accrual of section 1983 claims." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995). A civil rights claim accrues when "'facts that would support a cause of action are or should be apparent.'" Id. (quoting Blumberg v. HCA Management Co., 848 F.2d 642, 645 (5th Cir. 1988)); see also Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991). Although the record contains undisputed evidence that plaintiffs were aware of the claimed conspiracy against them as early as 1983, clearly outside the three-year limitations period, they argue that the doctrine of "continuing violations" applies to preserve this action, and that there are disputed factual issues concerning incidents claimed to be part of the conspiracy and which occurred within the applicable limitations period. Thus, they seek compensation for injuries occurring both within and outside of the limitations period.

Plaintiffs rely upon our decision in Martin v. Nannie and the Newborns Inc., 3 F.3d 1410, 1415 (10th Cir. 1993) to support their argument that the "continuing violation doctrine" applies to this civil rights case. Martin was a Title VII case, in which we recognized the "equitable" doctrine under which "a claim of discrimination may include challenges to incidents which occurred outside the statutory time limitations of Title VII if the various acts constitute a 'continuing pattern of discrimination.'" Id. (quoting Furr

---

[2](...continued)
§ 37-1-4.

v. AT & T Techs., Inc., 824 F.2d 1537, 1543 (10th Cir. 1987).  In a subsequent case, we noted that the plaintiff, seeking to apply the continuing violation doctrine to a § 1983 case, "cite[d] no case in which a court has extended the continuing violation doctrine to a § 1983 claim."  Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994) (prisoner sued various state actors for allegedly violating his constitutional rights during criminal investigation and trial resulting in felony convictions).  We further observed that "what matters for statute of limitations purposes is the date on which the conspiracy claim accrued, not the date that the defendants allegedly commenced their conspiracy."  Id. (citing Robinson, 895 F.2d at 654-55).[3]

Some courts have observed that the "continuing violation doctrine" has rarely been applied outside of the Title VII employment discrimination context.  See, e.g., LRL Properties v. Portage Metro Housing Auth., 55 F.3d 1097, 1105 n.3 (6th Cir. 1995) ("Courts have been extremely reluctant to apply [the continuing violation] doctrine outside of the context of Title VII."); McGregor v. Louisiana State Univ. Bd. of

_____

[3]Plaintiffs argue that Robinson supports the application of the continuing violation doctrine to this case, citing Robinson for the proposition that "with respect to civil rights *conspiracy* claims, the Tenth Circuit has held that such claims do not even *accrue* until the conspiracy has run its course."  Appellants' Brief-in-Chief at 47.  Plaintiffs misstate the holding of Robinson.  Robinson involved a claimed conspiracy to cause the malicious prosecution of the plaintiff.  We rejected the defendants' statute of limitations defense, based on their claim that the conspiracy commenced before the applicable limitations period, because we held that the plaintiff's malicious prosecution claim did not accrue until the plaintiff was acquitted, in his second criminal trial.  Robinson does not purport to establish an accrual rule for all types of conspiracy claims.

-7-

Supervisors, 3 F.3d 850, 866 n.27 (5th Cir. 1993) ("[C]ourts, including this one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases."); Young v. City of Allentown, 882 F. Supp. 1490, 1496 n.7 (E.D. Pa.) (while noting that the continuing violation doctrine as a tolling device in Title VII cases is "quite common," the court observed that the "Third Circuit does not appear to have decided . . . whether the continuing violation theory should apply in the context of Monell municipal liability under s. 1983"), aff'd, 66 F.3d 314 (3d Cir. 1995); but see, Gutowsky v. County of Placer, 108 F.3d 256, 259 (9th Cir. 1997) (holding that the continuing violations doctrine used in Title VII cases applies to § 1983 cases). Other courts, while not expressly stating any limitations to its application, have discussed it as if it were a concept which applies only to employment discrimination cases. See, e.g., Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir. 1994); Gandy v. Sullivan County, 24 F.3d 861, 864 (6th Cir. 1994); Cornwell v. Robinson, 23 F.3d 694, 703-04 (2d Cir. 1994); Pike v. City of Mission, 731 F.2d 655, 660 (10th Cir. 1984); Duke v. Pfizer, Inc., 668 F. Supp. 1031, 1041 (E.D. Mich. 1987), aff'd, 867 F.2d 611 (6th Cir. 1989).

In any event, it is to be narrowly applied, and is not intended to excuse plaintiffs from diligently pursuing their claims. As we expressly stated in Martin, "[t]he continuing violation doctrine is premised on the equitable notion that the statute of

limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Martin, 3 F.3d at 1415 n.6. Accordingly:

> [I]f an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge with the EEOC with respect to that event or series of events.

Id.

This is exactly the kind of case to which the continuing violation doctrine should not apply. As the district court held:

> [I]t is uncontroverted that Dr. Rassam knew or claimed to know that there was a conspiracy to deprive him of work -- the predicate of all of his claims--at the very latest by August 1987, when he addressed the San Juan College Board, and surely by September 1, 1987, the date of a lengthy letter to the San Juan College Board in care of Defendant Brewer. Indeed, according to the complaint, Dr. Rassam had notice of Defendant Brewer's conflict of interest in 1983.

Appellants' App. Vol. III at 1976. We agree that the uncontroverted evidence in the record, including Mr. Rassam's own affidavit, establish that he was aware of the claimed conspiracy, as well as the conduct giving rise to his various state law claims, well outside of the limitations period.

To the extent he claims injury from defendants' conduct within the statutory period, we agree with the district court that the evidence of any prohibited or actionable conduct is vague and conclusory. For example, Ron Helland, the Superintendent of Aztec Schools, testified by deposition that defendant Henderson described Mr. Rassam as

-9-

difficult to work with, but that Mr. Helland could not recall the specifics of Mr. Henderson's dissatisfaction. Appellants' App. Vol. V at 1612-14. Plaintiffs also rely on the testimony of Darla Whitney-Welles, who served in the New Mexico Legislature from 1991 to 1994. Her testimony was that "[i]t's just commonly known in government communities that they don't do work with Dr. Rassam." Id. at 1565. When asked if anyone had told her that the county was "blacklisting" Mr. Rassam, Ms. Whitney-Welles responded that the current county manager "told me about eight or nine months ago that they wouldn't even consider contacting Dr. Rassam or talking with him." Id. at 1566. She further testified that defendant Henderson said Mr. Rassam was "hard to deal with." Id. at 1564. Robert Stannard, a local engineer, testified that he believed that Mr. Rassam was "on the outs" but did not have any specific information on it, "[i]t's more of a background noise is what I hear." Id. at 1623. All of this evidence, even construed most favorably to plaintiffs, establishes no more than that Mr. Rassam was perceived as a difficult person with whom people did not enjoy working. They do not establish even a dispute as to whether the defendants conspired to drive him and his company out of business.

To support his claim that the alleged conspiracy was in part motivated by ethnic animosity, Mr. Rassam points to the following testimony by defendant Brewer, in an unrelated case:

> Dr. Henderson . . . feels -- I think he would not want to enter into a contract with Dr. Rassam again, because I think it is a diversion. It is an expense,

not only of cash, but of time and it is -- I guess my time as a consultant, working with elected officials and the success of it, has been tied to no surprises, and I think with Dr. Rassam, there are surprises. Things pop up that turn into mountains that normally could be worked out over a cup of coffee.

So, surprises are dangerous and are aggravating, and there is enough problems dealing with all of the bureaucracy and the funding and the equal opportunity and everything else that is just connected with doing business in this society today . . . and not haggling over the fine line of some very -- I am not discounting Dr. Rassam's feelings in his legacy that he brings from the country that he was born in. He has very strong feelings, and they become paramount to him. And I understand that, but they can be detrimental to the operation of a public institution . . . .

Id. at 1573. We agree with the district court that, at best, the statement shows defendant Brewer's opinion that Mr. Rassam was difficult to deal with, and very opinionated. Even construed most favorably to plaintiffs, it does not establish that there is a disputed fact as to whether defendant Brewer's reluctance to do business with plaintiffs stemmed from ethnic prejudice.

Plaintiffs also rely heavily on conduct concerning the "Loop Road" contracts with San Juan College, in support of their claim that material disputed factual issues remain regarding incidents within the limitations period. Plaintiffs argue that, in essence, the two purportedly separate contracts were really part of the same project, and were awarded to Brewer Associates in a sham competitive bidding process, prior to the date when plaintiffs were even interviewed about their bid. Despite plaintiffs' claims to the contrary, our careful review of the record indicates that there were indeed two separate contracts, one of which required the issuance of a request for proposals, which request

was sent to Tech, Inc., and one of which did not require the issuance of a request for proposals. Brewer Associates was awarded the non-competitive contract. Tech, Inc. submitted a bid on the other (competitive) one and was interviewed, prior to the award of the contract to Brewer Associates. The record contains evidence of legitimate reasons for that award, and does not support plaintiffs' claim that the entire process was a sham, orchestrated by defendants, to prevent plaintiffs from receiving the contract.[4]

Finally, we agree with the district court that the record does not support plaintiffs' argument that defendants' conduct in connection with a March 1994 request for proposals suggests discrimination or even suggests a factual dispute about such discrimination. Nor does the record support the existence of a material disputed fact about whether plaintiffs have even submitted any bids to San Juan County since November, 1989.[5]

---

[4]Plaintiffs have taken some liberties with the record. For example, as part of their argument that there was no real selection committee to choose the firm to whom the competitive bid would be awarded, they argue that, while defendants claimed Stan Vollmert was a member of the committee, in fact Mr. Vollmert admitted he was not. Mr. Vollmert's deposition testimony was that, while he was not part of a "team" which selected engineers for San Juan College projects, he "was asked opinions and asked to look at submittals" and "gave comments as requested." Appellants' App. Vol. V at 1501-02. Thus, he clearly participated in the selection process, albeit not as part of a committee.

[5]As plaintiffs acknowledge, defendant San Juan County submitted an affidavit from its purchasing director who stated that the County had no record of any proposal submitted by Tech, Inc. after November 1989. Plaintiffs' only rebuttal to this is Mr. Rassam's own otherwise unsupported statement that he had submitted several project bids, all of which were rejected. Obviously, plaintiffs' claim that defendants have denied them the opportunity to participate in public contract projects is undermined if in fact they have not even submitted bids. Plaintiffs' argument that they felt such submission would

(continued...)

-12-

In sum, we affirm the district court's conclusion that plaintiffs' cause of action accrued as early as 1983, and certainly no later that 1987, well outside the applicable limitations period.   The continuing violation doctrine does not "revive" any of his claims relating to conduct occurring outside the limitations period, and his evidence of prohibited conduct occurring within the limitations period is vague, speculative and conclusory.  We therefore AFFIRM the judgment of the district court, granting summary judgment to defendants.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[5](...continued)
be futile is supported only by speculation.