759 F.2d 271
 WISNIEWSKI, Susan and Klock, Debra Wisniewski, Appellants,
v.
JOHNS-MANVILLE CORP., Johns-Manville Sales Corporation,
Raybestos-Manhattan, Inc., Owens-Illinois, Inc.,
Celotex Corporation, Keene Corporation,
Unarco Industries, Inc.
v.
EAGLE-PICHER INDUSTRIES, INC., Owens-Corning Fiberglas Corporation.
Janet M. RICE, as parent and natural guardian of Valerie D.
Rice and Thomas W. Rice, Janet M. Rice, in her own
right and Paul A. Rice, Appellants,
v.
JOHNS-MANVILLE CORP., Johns-Manville Sales Corporation,
Raybestos-Manhattan, Inc., Owens-Corning Fiberglas Corp.,
Owens-Illinois, Inc., Celotex Corporation, Eagle-Picher
Industries, Inc., Amatex Corporation, Unarco Industries,
Inc., Fibreboard Corporation, Southern Textile Corp., H.K.
Porter Co., Inc., Porter Hayden Co., Abex Corporation,
Maremont Corporation, Lear Siegler, Inc., Bendix
Corporation, J.P. Stevens, Inc., Uniroyal, Inc., Union
Carbide Corporation, Georgia-Pacific Corporation, General
Motors Corporation.
 Nos. 82-1045, 82-1046.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6),
March 29, 1985.
Decided April 11, 1985.
 
 Norman Perlberger, Mitchell S. Cohen, James R. Kahn, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellants.
 Michael J. Plevyak, Andrew J. Trevelise, Malcolm & Riley, West Chester, Pa., for appellee, Celotex Corp.
 Robert S. Forster, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for appellee, Owens-Corning Fiberglas Corp.
 Barbara Pennell, Joseph R. Thompson, Philadelphia, Pa., for appellee, Eagle-Picher, Industries, Inc.
 Oliver C. Biddle, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellee, Raybestos-Manhattan, Inc.
 James A. Young, Daniel J. Zucker, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for appellee, Owens-Illinois, Inc.
 Howard M. Girsh, Steinberg & Girsh, Philadelphia, Pa., for appellee, Union Carbide Corp.
 Clayton H. Thomas, Jr., Philadelphia, Pa., for appellee, Abex Corp.
 Joseph H. Foster, White & Williams, Philadelphia, Pa., for appellee, Southern Textile Corp.
 Dudley Hughes, Detweiler, Hughes & Kokonos, Philadelphia, Pa., for appellee, Unarco Industries, Inc.
 Walter S. Jenkins, McWilliams & Sweeney, Philadelphia, Pa., for appellee, Maremont Corp.
 Audrey J. Becker, David E. Prewitt, Philadelphia, Pa., for appellee, Porter Hayden Co.
 Perry S. Bechtle, LaBrum & Doak, Philadelphia, Pa., for appellee, Keene Corp.
 Charles W. Craven, Jo Fineman White, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for appellees, Johns-Manville Corp. and Johns-Manville Sales Corp.
 Alan Klein, Drinker, Biddle & Reath, Philadelphia, Pa., for appellees, Uniroyal, Inc. and Georgia-Pacific Corp.
 Edward R. Paul, Nilon, Paul & Mardinly, Media, Pa., for appellee, Lear Siegler, Inc.
 George J. Lavin, Jr., Liebert, Short, FitzPatrick & Lavin, Philadelphia, Pa., for appellee, General Motors Corp.
 G. Wayne Renneisen, George A. Amacker, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for appellee, Bendix Corp.
 Before ALDISERT, Chief Judge, GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Chief Judge.
 
 
 1
 This diversity case requires us to predict what the Supreme Court of Pennsylvania would decide if faced with claims brought by relatives of asbestos workers for negligent infliction and intentional infliction of emotional distress caused by the illness and subsequent deaths of the workers. The district court held that, under Pennsylvania law, appellants failed to state a claim upon which relief could be granted, and dismissed the claims pursuant to F.R.Civ.P. 12(b)(6). We affirm as to the negligent infliction cause of action, but reverse as to the intentional infliction claim.
 
 I.
 
 2
 Appellants are the wife and children of men who have died from exposure to asbestos. They brought suit against Johns-Manville and other manufacturers and vendors of asbestos products, based on a variety of theories, including products liability and infliction of emotional distress. The only issues presented in this appeal are those involving the emotional distress claims.
 
 
 3
 In the pleadings, appellants raised claims based on both negligent and intentional infliction of emotional distress. They alleged that their fear of contracting cancer due to household exposure to asbestos contained on their husband's/fathers' work clothes and tools caused identifiable physical symptoms, such as headaches. No symptoms, however, arose directly from their exposure to the asbestos itself. The district court dismissed the emotional distress claims and this appeal followed.
 
 II.
 
 4
 Appellants contend that they may recover for negligent infliction of emotional distress either because asbestos fibers have impacted on their lungs or because they fall within the "zone of danger" of such an impact. Relying on an intentional infliction of emotional distress theory, appellants also maintain that they can recover damages resulting from the fear of future illness.
 
 
 5
 Our standard of review for Rule 12(b)(6) dismissals was stated in Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (citations omitted):
 
 
 6
 The standard by which the orders must be tested is whether taking the allegations of the complaint as true, ... and viewing them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom, ... "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."
 
 III.
 
 7
 At the outset, we must make several points. In diversity cases, because a federal court must apply the substantive law of the state in which it sits, Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal court often must engage in a substantial amount of conjecture as to what the state's highest court would decide if faced with the case. This aspect of our decisionmaking becomes especially troublesome when, as here, the state supreme court purposefully avoids an issue, leaving us in an ambiguous situation with little to guide us. Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise. See, e.g., Commissioner v. Estate of Bosch, 387 U.S. 456, 464-65, 87 S.Ct. 1776, 1782-83, 18 L.Ed.2d 886 (1967); West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).
 
 
 8
 Moreover, we are very conscious of the specific context in which we decide this case. Litigation stemming from the manufacture and distribution of asbestos, a known carcinogen, has reached crisis proportions. State and federal court dockets are swollen with these cases. Major corporations are threatened with, or already have declared, bankruptcy as a result of this litigation. See In re Amatex Corp., 755 F.2d 1034 (3d Cir.1985). Our duty, however, is to decide the case before us. We leave to Congress or the state legislatures and, where relevant, to the state courts the task of expanding or restricting liability for asbestos production.
 
 
 9
 Finally, we note that it is the procedural posture of this appeal that controls our decision. Under the federal notice pleading rules, the threshold for stating a cause of action to survive a Rule 12(6) motion is very low. Unlike an appeal from a grant of summary judgment, we do not decide this case on the basis of supporting factual affidavits, depositions, or documents, but only on the naked averments of a complaint filed under the notice pleading tradition. With these precepts in mind, we now turn to the merits of the question presented.
 
 IV.
 
 10
 Settled Pennsylvania law clearly disposes of the negligent infliction of emotional distress claim. In Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 471 A.2d 493 (1984), the Superior Court of Pennsylvania reviewed the dismissal of a claim for negligent infliction of emotional distress based on the risk to appellant's own health from exposure to asbestos fibers transmitted into the household by her husband. In affirming the dismissal, the court held: "We agree with the lower court that until Thelma Cathcart is able to allege some physical injury or some medically-identifiable effect linked to her exposure to asbestos particles, her claim for negligent infliction of emotional distress is not legally cognizable." Id. at 152, 471 A.2d at 508. See also Berardi v. Johns-Manville Corp., --- Pa.Super. ---, 482 A.2d 1067 (1984) (relying on Cathcart ). Appellants in this case have alleged no injuries that stem from exposure to the asbestos itself. Thus, believing that the Supreme Court of Pennsylvania would approve the thorough analysis of the decision in Cathcart, we hold that Cathcart controls our decision on this issue, and that the district court's dismissal of the negligent infliction claim was proper.
 
 V.
 
 11
 Current Pennsylvania law, however, does not clearly state whether appellants should be allowed to proceed with their intentional infliction claim. The Supreme Court of Pennsylvania has held that a claim based on intentional infliction of emotional distress presents a valid cause of action. Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970). The court sustained this complaint, however, based on its extremely bizarre circumstances. Plaintiffs' fourteen-year old son was struck by a motor vehicle driven by the defendant. Without attempting to obtain medical assistance or to notify the police or the victim's parents, the defendant removed the body from the scene of the accident, stored the body in his garage, and a few days later buried the body in a field. More than two months later, the partially decomposed body was found and the remains returned to the parents. We are not entirely certain that this single precedent alone would impel the Pennsylvania courts to apply that holding to a products liability action, especially a claim based on fear of future injury alone without accompanying asbestos-related physical injury.A.
 
 
 12
 Yet we are aware that Pennsylvania courts have permitted claims in situations somewhat removed from the gruesome context of Papieves. Two cases, for example, relate to the special landlord-tenant relationship, Fair v. Negley, 257 Pa.Super. 50, 390 A.2d 240 (1978) (plurality opinion), and Beasley v. Freedman, 256 Pa.Super. 208, 389 A.2d 1087 (1978), hold that tenants have the right to allege and to prove that landlords, by breaking the implied warranty of habitability, have intentionally inflicted emotional distress upon the tenants. Although we confess to a nagging uncertainty, perhaps under a certain set of facts Pennsylvania would permit a party to raise the claim in a products liability case. See generally Bartanus v. Lis, 332 Pa.Super. 48, --- - ---, 480 A.2d 1178, 1184-85 (1984) (discussing evolution of intentional infliction claim).
 
 B.
 
 13
 As to basing the claim on fear of future injury alone, Pennsylvania case law is silent. In settling this question in a negligent infliction claim in Cathcart, 324 Pa.Super. 123, 471 A.2d 493, the court avoided speaking to the question in the intentional infliction context. Id. at 153, 471 A.2d at 509. See also Berardi v. Johns-Manville Corp., --- Pa.Super. ---, ---, 482 A.2d 1067, 1072 (1984) (avoiding intentional infliction issue).
 
 VI.
 
 14
 On the present posture of the proceedings (a Rule 12(b)(6) dismissal), we believe that the preferable course is to allow this case to proceed, at least, to the summary judgment stage. At that stage, the court will require the parties, especially the plaintiffs, to develop the factual basis for their pleadings. The court then will be in a position to relate the facts to the uncertain perimeters of Pennsylvania state law, and make its prediction based upon those factual underpinnings.
 
 
 15
 We do not suggest that the task of the district court will be easy, because the controlling legal precept is expressed in the most abstract of terms: "intentional, outrageous or wanton conduct which is peculiarly calculated to cause ... serious mental or emotional distress." Papieves, 437 Pa. at 378, 263 A.2d at 121. The precise contours of such conduct in Pennsylvania in the context of intentional infliction of emotional distress have yet to be developed by case law. At best, we have uncertainty as to what facts support the meaning of the controlling legal precept. This is because in Papieves the court expressed itself in extremely cautionary language. Although it spoke in terms of liability for the purposes of that case, the court carefully noted:
 
 
 16
 We recognize that any extension of legal liability to acts which cause emotional distress is not without its problems. We also recognize that the law cannot serve to guarantee all men's peace of mind: as the late Judge Magruder remarked, "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." [Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1035 (1936).]
 
 
 17
 Id.
 
 
 18
 Appellants argue that they have made the appropriate averments in their complaints to bring this case within the ambit of Papieves or the Restatement (Second) of Torts Sec. 46.[1] Incredibly, appellants have not included in the appendix filed with this court the text of the complaint upon which this Rule 12(b)(6) motion must stand or fall. They do include, however, "Plaintiffs' Memorandum in Opposition to Motion to Dismiss of Defendant Raybestos-Manhattan, Inc." App. at 23a. Therein, they rely on the portions of their complaint set forth in the margin.[2] Specifically, they argue that support for paragraphs 38 and 40 of the complaint can be found in Sec. 46 of the Restatement (Second) of Torts. App. at 34a. Denied the appropriate assistance of counsel in adjudicating this case, due to their failure to observe either the federal rules or this court's internal rules pertaining to appendices, we have examined sua sponte the complaint filed in the district court and have learned that at least in paragraphs 6(c), 13, 18, and 22, plaintiffs made averments of "wilfully", "wantonly", "wanton disregard", and "intentionally" in regard to appellees' conduct. Applying the teachings of Bogosian, 561 F.2d 434, 444 (3d Cir.1977), we will view these evanescent pleadings "liberally", and permit the case to pass muster at this time. When faced with a motion for summary judgment suitably supported by detailed facts, however, appellants will be forced to demonstrate that their pleading promises can be matched by stated deeds.
 
 
 19
 Moreover, such facts must rise to meet an extremely important threshold: "[T]he gravamen of this tort [of intentional infliction of emotional distress] is that the conduct complained of must be of an extreme or outrageous type." Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa.Super. 377, 383, 368 A.2d 770, 773 (1976). Overreaching, but not abusive, acts suffered in the course of everyday living will not support a claim for intentional infliction. See, e.g., Nagy v. Bell Telephone Co. of Pennsylvania, 292 Pa.Super. 24, 436 A.2d 701 (1981) (disclosure of long-distance telephone numbers not outrageous conduct); Jones, 244 Pa.Super. 377, 368 A.2d 770 (credit collection procedures not beyond bounds of decency).
 
 
 20
 When apprised of the specific facts, the district court then must analogize from certain given or assumed resemblances to the cause of action already existing in state law to an inferred resemblance stated in the complaint. Deprived of an established general rule (legal principle) in an area of developing law, an area described by the Supreme Court of Pennsylvania as "not without its problems," Papieves, 437 Pa. at 378, 263 A.2d at 121 (1970). The district court will have to fashion the governing precept in this case on an ad hoc basis. The district court will have to compare the facts before it with those of Papieves (supporting a claim) and those of Jones v. Nissenbaum, Rudolph & Seidner and Nagy v. Bell Telephone Co. of Pennsylvania (denying claims) and also divine what public policy considerations in the landlord-tenant relationships supported claims in Fair v. Negley and Beasley v. Freedman. But the crucial question will be whether the compared facts resemble, or differ from, one another in relevant aspects, that is, aspects that are relevant to what constitutes "intentional, outrageous, or wanton" or "extreme" conduct peculiarly calculated to cause serious mental or emotional distress. See M. GOLDING, LEGAL REASONING 45 (1984). Accordingly, further proceedings are necessary to determine whether those premises will be sufficient as a matter of law.
 
 VII.
 
 21
 Conceding that the intentional infliction claim is extremely close, we will reverse the judgment of the district court on the intentional infliction ruling, but affirm on the negligent infliction ruling.
 
 
 22
 WEIS, Circuit Judge, dissenting.
 
 
 23
 As the majority recognizes, the tort of intentional infliction of emotional distress is still in its infancy. Deliberate development in the common law tradition is amply justified in formulating the duty, breach, and recovery concepts in this ill-defined area. Although the "flood gates" and "parade of horribles" arguments are of little weight in most circumstances, I believe that the present case is one where those fears are justified.
 
 
 24
 The majority and I are in agreement on the crisis proportions of the asbestos litigation. The courts are inundated with these cases and many more are certain to follow.[1] The individual resolution of these thousands and thousands of claims, through submission to juries and courts that may not consider the problem as a whole, has and will continue to result in unequal and unfair distribution of available funds. Some deserving claimants do not receive enough; others less seriously affected receive too much. Given the present state of affairs, it is not unrealistic to expect that some deserving claimants will be unable to collect anything at all on their judgments. See Jackson v. Johns-Manville Sales Corp., 750 F.2d 1314, 1329 (5th Cir.1985) (Clark, C.J., dissenting).
 
 
 25
 The unevenness of recovery is a characteristic of the common law tort system, a factor which we are not empowered to change in this case. That a crisis exists does not authorize us to alter existing state law theories of liability. See Jackson v. Johns-Manville Sales Corp., 750 F.2d 1314 (5th Cir.1985) (in banc).
 
 
 26
 We are asked to predict the future course of an uncharted area of Pennsylvania law and are to do so against the background of the asbestos scene. Even if it be assumed that in the abstract there is merit to enlarging the tort theory plaintiffs press here, the argument founders when resources appear inadequate even to compensate in circumstances where well accepted duty concepts have been violated.
 
 
 27
 The climate for expansion is not propitious, and I believe the appellate courts of Pennsylvania will be wary in approaching the question thrust upon us in this case. Indeed, in Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 471 A.2d 493 (1984), and Berardi v. Johns-Manville Corp., --- Pa.Super. ---, 482 A.2d 1067 (1984), the Pennsylvania Superior Court rebuffed attempts to expand liability for negligent infliction of emotional distress. In those cases, recovery was denied for spouses who observed their husbands' gradual development of asbestosis. In both instances, the court specifically declined to rule on claims of intentional infliction of emotional distress because the issue had not been specifically raised in the trial court.
 
 
 28
 It is noteworthy that in the case at hand the plaintiffs' efforts in the district court and initially on appeal were directed mainly toward the negligent infliction claim. While this appeal was pending, the Superior Court decided Cathcart. Conceding its applicability, plaintiffs were left with the intentional infliction count which apparently was more of an afterthought than a serious contention in the district court.
 
 
 29
 The Pennsylvania courts have sanctioned liability for intentional infliction of emotional distress in some situations. In Fair v. Negley, 257 Pa.Super. 50, 390 A.2d 240 (1978), and Beasley v. Freedman, 256 Pa.Super. 208, 389 A.2d 1087 (1978), the Pennsylvania Superior Court recognized a cause of action where landlords allegedly abused their position, vis-a-vis their tenants. According to Sec. 46 RESTATEMENT OF TORTS 2d, conduct may be considered extreme and outrageous when it arises out of a relationship which gives the tortfeasor authority over the victim or power to affect his interest. Similarly, in Bartanus v. Lis, 332 Pa.Super. 48, 480 A.2d 1178 (1984), a parent-child-aunt relationship was the focus of the controversy. It is important to note that in the case at hand the parties are strangers and no special relationship exists between them.
 
 
 30
 The Pennsylvania Supreme Court's case of Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970), presents a far different situation than that here. The court's discussion of Sec. 868 of the Restatement indicates a special solicitude for claims of improper handling of a decedent's body. Indeed, that the opinion so cautiously circumscribed the holding in the bizarre and gruesome circumstances of that case argues strongly against liberal application of the ruling to dissimilar fact situations. The state court's cautionary note, that "extension of legal liability to acts which cause emotional distress is not without its problems," id. at 378, 263 A.2d at 121, gives additional reason for pause, especially in cases where as here, the liability sought goes well beyond recognized duties.
 
 
 31
 The Pennsylvania courts have cited Sec. 46 of the Restatement and its requirement that the defendant's conduct be "outrageous and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Bartanus v. Lis, 332 Pa.Super. at ---, 480 A.2d at 1184. As the Restatement puts it, "it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." RESTATEMENT (SECOND) OF TORTS Sec. 46, Comment d.
 
 
 32
 In judging whether the defendants' conduct here has been outrageous, it is necessary to compare it with activity held to state a cause of action in the reported Pennsylvania cases.
 
 
 33
 As noted earlier, there is no special relationship between plaintiffs and defendants, as was true in the landlord-tenant cases. These plaintiffs were relatives of deceased employees of the concerns which had purchased asbestos from defendants. Plaintiffs are thus three steps removed from any relationship with the manufacturers. Moreover, defendants sold their products to companies that could be expected to provide for employee safety in using the substance for various applications.
 
 
 34
 By no construction of the complaint could defendants be alleged to have intended the infliction of emotional harm on these plaintiffs. They were total strangers. There had never been contact between the parties or any occasion which could serve to inspire action against the plaintiffs by defendants.
 
 
 35
 It is significant too that there was some social utility to the defendants' activity in manufacturing a product having outstanding insulation and fire-retardant properties. The fact that asbestos is conceded as dangerous to the health of those who inhale its fibers cannot obscure the product's effectiveness in reducing the hazard of fire. As one example, it was this characteristic which led to its use in ships built during World War II when the threat of fire after a torpedoing was a matter of serious concern. Such circumstances must be contrasted with the indefensible conduct of the defendants in the Papieves case.
 
 
 36
 Thus, in this case there was no relationship between the parties, and the defendants' actions were not intentionally directed toward the plaintiffs. Viewed against the facts at hand, the defendants' conduct does not rise to the level of outrageousness required under Pennsylvania law.
 
 
 37
 Our task in predicting what the appellate courts of Pennsylvania would do if this case were brought to them is not an easy one. I am not persuaded, however, that they would find that plaintiffs have stated a cause of action. A fair reading of Pennsylvania law is that recovery for intentional infliction of emotional distress may be permitted where the injury results immediately and directly from specific conduct, directed to specific plaintiffs. Plaintiffs here have not presented such a case even under the relaxed standard of review applicable to a 12(b)(6) motion.
 
 
 38
 If plaintiffs are held to have stated a claim, one wonders what principled limitations can be placed on this theory of recovery. May persons who live in a neighborhood in the vicinity of a shipyard or railroad repair yard maintain a cause of action because of fear that the wind may have blown particles of asbestos into their homes. May parents who fear that their children have inhaled asbestos in a school room where that substance was used in construction recover for intentional infliction of emotional distress.[2] Similarly, may a motorist recover because of emotional distress brought on by fear of contracting cancer as a result of driving a vehicle equipped with asbestos brakelinings, I fail to see any reasoned distinction between those scenarios and the case stated by plaintiffs.
 
 
 39
 Courts cannot avoid the necessity of putting an end to liability, of staking out the stopping point. In his ruminations on the theory of causation, Professor Prosser wrote that, "It is still unthinkable that anyone shall be liable to the end of time for all the results that follow in endless sequence from his single act." Prosser, Palsgraf Revisited, 52 MICH.L.REV. 1, 24 (1953). He does not come to a firm conclusion on how best to respond to the question in a negligence context, but I think the title the Restatement authors have given to Sec. 46 is helpful to resolution of the problem here.
 
 
 40
 "Intentional infliction of emotional distress" suggests to me that relief is to be permitted when the intent and injury are direct. The objectionable conduct is more like the rifle shot than the shotgun blast--akin to the initial splash in the pond, rather than the ripples. Like most analogies these are faulty and invite distraction from the issue, but I believe they capture the spirit of Pennsylvania law in this area. Lines must be drawn at some point, whether arbitrary or not. I believe that the Pennsylvania Supreme Court would mark the line somewhere short of the plaintiffs' claim in this case.
 
 
 41
 I dissent.
 
 
 
 [1]
 Outrageous Conduct Causing Severe Emotional Distress
 (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
 (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
 (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
 (b) to any other person who is present at the time, if such distress results in bodily harm.
 
 
 [2]
 The complaint states:
 
 
 [38]
 As a direct and proximate result of the aforesaid, plaintiffs were caused to suffer substantial anxiety, emotional depression, physical and mental distress
 
 
 [39]
 As a direct and proximate result of the aforesaid, plaintiffs have developed severe anxiety, hysteria or phobias, any or all of which may develop or has developed into a reasonable and traumatic fear of an increased risk of additional asbestos-caused and/or related disease, including, but not limited to, cancer to plaintiffs, resulting from exposure, directly and indirectly, to the asbestos products of defendants
 
 
 [40]
 As a different and proximate result of the aforesaid, plaintiffs, individually and jointly, have suffered and will continue to suffer permanent and on-going psychological damage which may require future psychological and/or medical treatments
 App. at 24a, 31a.
 
 
 [1]
 As of March 1983, approximately 24,000 claimants had filed suits. Estimates of the number which will be filed in the next thirty years range from 32,000 to 200,000. Kakalik, Ebener, Felsteiner, Haggstrom & Shanley, Variation in Asbestos Litigation Compensation and Expenses 4 (Institute for Civil Justice, Rand Corp. (1984))
 
 
 [2]
 Congress has directed that friable asbestos be removed from school buildings. 20 U.S.C. Sec. 3601(a)(3)(6). It is estimated that at least 14,000 schools will be affected. See Jackson v. Johns-Manville Sales Corp., 750 F.2d 1314, 1335 (appendix) (5th Cir.1985)