**THE HARTFORD INSURANCE,
COMPANY OF THE MIDWEST
Plaintiff,**

v.

**Laverne GREEN, Defendant.**

No. Civ.A. 03–3368.

United States District Court,
E.D. Pennsylvania.

March 16, 2004.

682

Dianne S. Wainwright, Brown & Levicoff PC, Pittsburgh, PA, for Plaintiff.

Arthur J. Seidner, Bensalem, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is a second action brought by Hartford Insurance Company of the Midwest ("Hartford") concerning a dispute with Laverne Green ("Green") over the extent of the uninsured motorist coverage available to Green under an automobile liability policy issued by Hartford in which Green was the named insured at time of her accident. The court previously dismissed an action filed by Hartford which sought a declaration that the dispute at issue was not subject to arbitration. The parties proceeded to arbitration where the arbitrators found in favor of Green and awarded Green uninsured motorist coverage equal to her bodily injury liability coverage.

In this action, filed post-arbitration, Hartford asks the court to vacate the arbitration award, contending that, under Pennsylvania law, the court has the power to review the arbitrators' decision and to vacate the award, if necessary, because the arbitration decision is based on Green's challenge to a provision of her insurance policy as contrary to public policy or legislative mandate.

Before the court are cross motions for summary judgment. The court finds that (1) Hartford's second complaint is not barred by collateral estoppel based on the court's decision in the previous case that the extent of insurance coverage under the policy was subject to arbitration in the first instance; (2) under Pennsylvania law, the court has the power to review the decision of an arbitrator if the decision implicates whether an insurance policy

provision violates public policy or a legislative mandate; and (3) Hartford has not violated public policy or a legislative mandate of Pennsylvania's Motor Vehicle Financial Responsibility Act. Accordingly, the court shall grant Hartford's motion for summary judgment.

## I. BACKGROUND [1]

On June 9, 1989, Hartford issued an automobile liability policy to Daniel Walsh. The policy provided for bodily injury liability coverage limits of $100,000 per person/$300,000 per accident and uninsured motorist coverage limits in the amount of $15,000 per person/$30,000 per accident. In February 1993, after Walsh and Green were married, Green was added to the policy as an additional driver. In January 1997, Green was substituted as sole named insured due to the couple's impending divorce. At the time of the substitution, Green did not file a new application for insurance nor was she issued a new policy. Green renewed her policy in June 1997 and June 1998 without making any changes to the uninsured motorist coverage limits initially elected by Walsh and paid the premiums.

On June 21, 1999, Green was injured in an accident with an uninsured motorist. Hartford paid Green $15,000, the maximum amount of uninsured motorist coverage under the policy. Green claimed, however, that because Hartford did not provide her with notice of her ability to elect uninsured motorist benefits equal to the amount of her bodily injury liability coverage at the time she was substituted for Walsh as the named insured under the policy, and failed to obtain a written request from her for lower uninsured motorist limits, she was entitled to have her policy reformed, to provide that the limits of her uninsured motorist benefits were

---

1. The underlying facts in this case are generally undisputed.

equal to the bodily injury liability insurance limits.[2] Under this theory, Green sought an additional $85,000 from Hartford, representing the difference between the uninsured motorist benefits paid and those that would be owed under the policy, as reformed, with $100,000 uninsured motorist coverage limits.

When the parties were unable to resolve their dispute, Hartford filed an action in this court seeking a declaration that Green was entitled only to the $15,000 Hartford had paid, and not the $100,000 in coverage that she now claimed. Green filed a motion to dismiss on the grounds that, because the policy contained a broad arbitration clause, the district court lacked jurisdiction to grant the requested declaratory judgment. Hartford countered that, notwithstanding the language of the arbitration clause, the dispute actually concerned whether Hartford had violated a legislative mandate (the notice requirements under the MVFRL), and, therefore, the dispute fell within an exception to the well-settled rule requiring arbitration where the parties have entered into a valid agreement to arbitrate the extent of insurance coverage.

This court concluded that the parties' dispute involved a disagreement over the extent of coverage under the policy. Thus, the court found that the dispute was subject to arbitration on the grounds that questions concerning the extent of coverage under an insurance policy are within the scope of an arbitration clause unless there is language in the clause that explicitly excludes coverage issues from the scope of arbitration. Because the arbitration clause in Green's policy contained no such exclusion, the court held that under the policy, an arbitrator and not the court, should hear the dispute in the first instance. The court dismissed the action for lack of subject-matter jurisdiction.

Hartford appealed this court's decision to the Third Circuit. On appeal, Hartford again argued that, because the parties' dispute involved an alleged failure by the insurer to comply with the MVFRL, the court, rather than an arbitrator should resolve the dispute.[3] The Third Circuit affirmed the decision of the district court, finding that "the vast majority of lower court decisions applying Pennsylvania law have held that questions concerning the extent of coverage under an insurance policy are within the scope of the arbitration clause unless there is language in the clauses [sic] that explicitly excludes coverage issues from the scope of the arbitration." Finding no express limitation to the arbitration clause in the policy issued by Hartford in this case, the court affirmed the dismissal of Hartford's suit. The parties then proceeded to arbitration.

The arbitration panel found in favor of Green in a terse opinion. The decision of the arbitrators states in full:

2. See Pl's Reply to Def's M. to Dismiss (and Br. in Supp. of Pl's M. for S.J.), Exh. H at 4; see also Exh. F at 4.

3. Conceding that this issue had never been squarely addressed by the Pennsylvania courts, Hartford cited for support several Pennsylvania cases, namely *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 648 A.2d 755 (1994), *Azpell v. Old Republic Ins. Co.*, 526 Pa. 179, 584 A.2d 950 (1991) and *Davis v. Government Employees Ins. Co.*, 500 Pa. 84, 454 A.2d 973 (1982), which, in Hartford's estimation, stood for the proposition that "a Court had the power to review an arbitration award that involved the invalidation of a clause of an insurance policy as contrary to an existing statute or the public policy expressed therein." Hartford then asserted that, by extension, "each of those decisions ... clearly mandate that *Courts*, and not arbitrators, will be the ultimate authority on questions involving the potential invalidation of clauses in insurance policies based on public policy grounds." The balance of Hartford's brief concerned the arbitrability of the dispute in the first instance.

And now this 1st day of May, 2003, after careful consideration of the extensive memoranda and case law submitted by both parties, we find in favor of Plaintiff Laverne Green and against Defendant Hartford. We reform the subject Hartford auto insurance policy covering Laverne Green, so that uninsured limits are equal to the liability limits of One Hundred Thousand Dollars ($100,000).

Accordingly, Plaintiff Laverne Green is awarded Eighty Five Thousand Dollars ($85,000.00), which is the net of our $100,000 award, reduced by the Fifteen Thousand Dollar ($15,000.00) credit to Hartford for uninsured monies previously paid by it to Plaintiff.

One of the three arbitrators dissented but stated no grounds for his dissent. As a result of the decision, the policy was reformed to provided that Green's uninsured motorist coverage was equal to her bodily injury liability coverage, allowing Green to collect as uninsured motorist benefits an additional $85,000. Hartford filed the instant lawsuit seeking to have this Court vacate the arbitrators' award.[4]

## II. DISCUSSION

### A. Standard for Summary Judgment

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When confronted with cross-motions for summary judgment "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary Kane, Federal Practice and Procedure § 2720 (1998). Thus, with respect to each party, summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. Id. at 251–52, 106 S.Ct. 2505. In making this determination, a court must draw all reasonable inferences in favor of the non-movant. See Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Thus, summary judgment should be granted only if no reasonable trier of fact could find for the non-moving party. See id.; Radich v. Goode, 886 F.2d 1391, 1395 (3d Cir.1989).

### B. Is Hartford's Claim Barred by Collateral Estoppel?

The court must first address the threshold issue of whether Hartford's claim in the instant matter is barred by the doctrine of collateral estoppel, in light of the court's decision in the previous declaratory judgment action between the same parties ordering the dispute to arbitration. Collateral estoppel, also known as issue preclusion, "prevents the relitigation of issues that have been decided in a previous action." Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency, 126 F.3d 461,

---

**4.** The court has jurisdiction to hear the dispute in that Hartford and Green are diverse parties. See 28 U.S.C. § 1332 (1994).

464 (3d Cir.1997). Under Pennsylvania law,[5] collateral estoppel applies when the following four elements are met: (1) The issue decided in the previous action must be identical to one presented in the later action; (2) The previous action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the previous action, or is in privity with a party to the previous action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous action. *Jones v. UPS*, 214 F.3d 402, 405–06 (3d Cir.2000) (citing *Rue v. K–Mart Corp.*, 552 Pa. 13, 713 A.2d 82, 84 (1998)). The parties agree that the only element in question in this case is whether the issue decided in the previous action between Hartford and Green is identical to the issue presented in the instant action.

■ The issue arising in connection with Hartford's first action, i.e., the pre-arbitration complaint, was whether the court, rather than an arbitrator, should hear in the first instance a case in which an insurer is alleged to have violated a legislative mandate but the insurance policy contains a broad arbitration clause that covers disputes between the insurer and the insured. Hartford argued that because, under Pennsylvania case law, the court had jurisdiction to review arbitration decisions concerning claims that a provision of an insurance policy is contrary to public policy, *by extension*, the court could decide in the first instance whether the insurance policy should be voided or reformed on public policy grounds. This argument was rejected by this Court and the Court of Appeals.[6]

The issue arising in connection with Hartford's second action, i.e., the post-arbitration complaint, is whether the court can now review the merits of the arbitrators' decision if that decision was based on a claim that a provision of the insurance policy violates a legislative mandate, and if so, whether the legislative mandate was violated. This is a distinct issue from the issue raised in the first suit by Hartford. To put it another way, the first case involved who should decide the issue in the

---

**5.** Federal courts look to the law of the adjudicating state to determine preclusive effect. *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir.2002) (citing *Greenleaf v. Garlock*, 174 F.3d 352, 357 (3d Cir.1999)).

**6.** In Hartford's previous declaratory judgment action, this court found that the parties had agreed to arbitrate their dispute and that the issue of the validity of the notice provided by Hartford under the MVFRL with respect to uninsured motorist coverage was a dispute within the scope of the arbitration clause (under the teachings of *Brennan v. General Accident Fire & Life*, 524 Pa. 542, 574 A.2d 580 (1990)). Specifically, the court found that both state and federal courts had held that the issue of whether an insured was given a choice in selecting uninsured or underinsured coverage limits was a question that should be arbitrated. *See Hartford v. O'Mara*, 123 F.Supp.2d 834 (E.D.Pa.2000); *Lamar v. Colonial Penn Ins. Co.*, 396 Pa.Super. 527, 578 A.2d 1337 (1990). Notwithstanding Hartford's argument that the dispute presented an "exception" to the general rule requiring arbitration where the parties have entered into a valid agreement to arbitrate, for the above reasons, the court concluded that the issue of whether Hartford had complied with the MVFRL's notice requirements in this case was a matter that should be determined by arbitration. (Def.'s Mot. for S.J., Exh. "C" at 5–7.)

The Third Circuit affirmed the holding of this court and concluded that the court had "made a proper assessment of Pennsylvania law." Finding that the case essentially presented a question concerning the extent of coverage, and that courts applying Pennsylvania law have held such questions as within the scope of an arbitration clause (absent language excluding coverage issues from arbitration), the parties dispute was properly sent to arbitration. (Def.'s Mot. for S.J., Exh. "B" at 3–4.)

first instance, the arbitrators or the court, while the second case involves, by contrast, whether the court has the power to review the arbitrators' decision, and if so, what are the merits of the dispute.

*Delaware River Port Authority v. Fraternal Order of Police*, 290 F.3d 567 (3d Cir.2002) is distinguishable. There, a "public corporate instrumentality" of the Commonwealth of Pennsylvania and the State of New Jersey brought a declaratory judgment action seeking a determination that the Delaware River Port Authority (the "DRPA") was not required to recognize or bargain collectively with unions representing "superior officers"[7] of the DRPA's Bureau of Police. *See id.* at 569, 571. The compact governing the DRPA did not expressly grant DRPA employees collective bargaining rights (or impose a duty to bargain collectively with unions), and only permitted the DRPA to be granted additional powers through legislation passed by one state and concurred in by the other state. *Id.* at 571.

The representative unions argued that a previous state court judgment, which mandated that the DRPA bargain in good faith with the bargaining agent for DRPA patrol officers, should be given preclusive effect, and therefore barred the latter declaratory judgment suit. *See id.* at 570. The Third Circuit agreed, holding that preclusive effect should be given to the state court judgment because the identical underlying issue in the subsequent declaratory judgment action, "whether an 'express statement' is necessary to modify the DRPA's obligation to bargain with its patrol officers," was litigated and decided in the prior suit. *Id.* at 574 (quoting *Fraternal Order of Police, Penn–Jersey Lodge 30 v. DRPA*, 323 N.J.Super. 444, 733 A.2d 545, 550 (1999)). The court reasoned that the determination that an express statement was not required to modify the DRPA Compact, the precise issue that the district court had decided in concluding in the declaratory judgment action that the DRPA had no duty to recognize collective bargaining rights, was "essential to the prior [state court] judgment" that the DRPA did have a duty to negotiate in good faith. *Id.* The court rejected the idea that the factual differences between the two cases, i.e. that the state court case involved a union voluntarily recognized by the DRPA and the federal case did not, had any legal significance. *Id.* at 575.

Unlike *Delaware River Port Authority*, the issue here (whether the court has the power to review the arbitrators' decision and, if so, whether Hartford violated the MVFRL) was not "essential to the [court's] prior judgment" (of whether, under the policy, the coverage dispute should be referred to the arbitrators in the first instance). Thus, because the issue of the court's power to review the arbitrators' decision on the merits, and if so, whether Hartford has violated the MVFRL was not "essential to the prior judgment," and in fact was not implicated at all, collateral estoppel does not bar the court from considering Hartford's complaint in the instant action.[8]

---

7. "Superior officers" are defined as corporals and sergeants with supervisory capacity employed by the DRPA. *Delaware River Port Authority*, 290 F.3d at 569.

8. The argument that the issues in this case are the same as those in the earlier declaratory judgment action may stem from Hartford's reliance in its declaratory judgment action on a line of cases addressing the court's power to review an arbitration award which is based upon challenges to provisions of an insurance policy as being contrary to constitutional, legislative mandate or against public policy. *See, e.g., Hall v. Amica Mutual Ins. Co.*, 538 Pa. 337, 648 A.2d 755, 758 (1994) ("[A] court has the power to review an arbitration award which is based on the declaration of an insurance policy clause to be void as against public policy . . ."); *Azpell v. Old Republic Ins. Co.*, 526 Pa. 179, 584 A.2d 950 (1991) (finding that the Court of Common Pleas had authority

### C. Does the Court Have Jurisdiction to Hear this Case?

The next issue is whether the court has jurisdiction to review the arbitrators' award. The arbitration award in this case is governed by the Pennsylvania Uniform Arbitration Act (the "Act"), 42 Pa. Cons. Stat. §§ 7301–7320 (1998).[9] The parties agree that the instant case fails to meet any of the statutory criteria for vacating an arbitration award under the Act.[10]

As an exception to these general rules governing the review of arbitration awards by the courts, the Pennsylvania Supreme Court has recognized that a court may review the merits of a decision to arbitrate where the claimant attacks a particular provision of an insurance policy as contrary to "constitutional, legislative, or administrative mandate, or against public policy or unconscionable." *Hall v. Amica Mutual Ins. Co.*, 538 Pa. 337, 648 A.2d 755, 758 (1994); *Davis v. Gov't Employees Ins. Co.*, 500 Pa. 84, 454 A.2d 973, 975 n. 5 (1983). In particular, the Pennsylvania Supreme Court has found that "where a claimant challenges a provision of an uninsured motorist clause as being contrary to statute, the [court] may exercise jurisdiction over the claim and review the merits of the arbitration award." [11] *Azpell v. Old Republic Ins. Co.*, 526 Pa. 179, 584 A.2d 950, 952 (1991). Under *Hall* and *Azpell*, the court may review an arbitration decision in two ways that are implicated here: (1) where it is challenged that the policy provision at issue violates public policy or (2) where it is challenged, as it has in this case, that the insurer (i.e., Hartford) has failed to comply with the provisions of a statute (i.e., the notice and written waiver provisions of the MVFRL).

The parties disagree as to whether the arbitrators' decision in this case is, in reality, based upon Green's challenge to a pro-

---

review the merit's of an arbitrator's award, "[w]here ... a claimant challenges a provision of an uninsured motorist clause [of an automobile insurance policy] as contrary to statute"). Hartford argued in the earlier suit that it could be inferred from this line of cases that disputes in which a claimant attacks an insurance provision as violative of a legislative mandate were not meant to be arbitrated in the first instance, but rather those issues are in essence policy issues that should be decided by courts and not arbitrators. As discussed above, Hartford's efforts to extend that line of cases to the issue of whether the arbitrator or the court should, in the first instance, decide the merits, bypassing arbitration, was rejected by this court and the Third Circuit.

9. Green's automobile insurance policy states that arbitration of disputes "shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act." (Def. Exh. A, Def. Mot. to Dismiss, 00–CV–5988).

10. In her motion for summary judgment, Green primarily argues that this court has no grounds to vacate the arbitration award. In doing so, Green cites the general rule for vacating arbitration awards located in Pennsylvania Uniform Arbitration Act, focusing on the fact that there is no basis on the facts of this case to conclude that the arbitrators exceeded their power, and that a mistake of law by the arbitrators (if any) is not a valid ground to vacate an arbitration award. *See* 42 Pa. Cons.Stat. Ann. § 7314 (West 1998) ("The fact that the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award."); *Aster v. Jack Aloff Co.*, 190 Pa.Super. 615, 155 A.2d 627, 629 (1959) ("Generally, ... arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either.").

11. The review of the arbitration award should be limited to "a comparison and interpretation of the insurance contract provision with a particularly promulgated statute," rather than a review of the monetary award itself to determine if the amount of the monetary award itself is contrary to public policy. *Azpell v. Old Republic Ins. Co.*, 584 A.2d 950, 952 (Pa.1991).

vision of the policy as being contrary to legislative mandate or public policy. To put it another way, before reviewing the merits of this claim, the court must determine whether Green is in actuality challenging the uninsured provision of her insurance policy as contrary to public policy, or whether the case involves Hartford's failure to comply with the provisions of the MVFRL. If either is true, the court may review the merits of the arbitrator's decision.

The relevant sections of the MVFRL are as follows. Section 1731 provides, in pertinent part, that:

**Availability, scope and amount of coverage**

**(a) Mandatory Offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this commonwealth, with respect to any motor vehicle registered or principally garaged in this commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa. Cons.Stat. Ann. § 1731(a) (West 1996). Furthermore, section 1734 provides that:

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to

or less than the limits of liability for bodily injury.

*Id.* § 1731.

The basis of Green's claim in arbitration was that the limits of the uninsured motorist provision in her policy should not be applied as stated (and instead reformed) because Hartford had not complied with the mandates of the MVFRL. Green argued to the arbitrators that, contrary to sections 1731 and 1734 above, she was not given the opportunity to select uninsured motorist coverage limits equal to the limits of her bodily injury liability coverage when she became the named insured in 1997. Specifically, she claims that she was not given notice of the opportunity to increase the uninsured motorist coverage limits selected by Walsh. Nor did Hartford obtain a written request from her for uninsured motorist limits lower than the bodily injury liability limits under her policy, as she claims was required under the statutes. For those reasons, Green argues that the lower uninsured motorist limits previously selected by her former spouse should not apply to her.[12] Hartford contends that Green is essentially arguing that the uninsured motorist provision was issued in contravention of legislative mandate (the MVFRL) and thus any arbitration decision made on that basis may be reviewed by this court under *Hall*.[13]

■ Green acknowledges that the Supreme Court of Pennsylvania has invoked jurisdiction to review arbitration awards in cases in which the claimant has attacked a particular provision of an insurance policy as contrary to public policy. *See, e.g.,*

---

**12.** *See* Pl's Reply to Def's M. to Dismiss (and Br. in Supp. of Pl's M. for S.J.), Exh. G at 3–4.

**13.** Defendant argues that she is not making a public policy argument. Even if the defendant is not making a public policy argument

in the strict sense, the court still has the power to review her case under *Hall* to the extent that she has challenged her insurance policy as contrary to statute or legislative mandate. *See Hall*, 538 Pa. at 342–43, 648 A.2d at 757–58; *Davis*, 454 A.2d at 975 n. 5.

*Hall,* 648 A.2d at 758 (holding that the Court of Common Pleas had the power to review an arbitration award based on a claimant's attack of a clause in his policy limiting the policy's territorial coverage); *Davis,* 454 A.2d at 975 n. 5 (rejecting the contention that the trial court lacked authority to review the merits an arbitration award based on a challenge to a clause of an insurance policy defining who qualified as an "uninsured" motorist); *cf. Azpell,* 584 A.2d at 952 (finding that the trial court erred in vacating an arbitration award based on an attack of the award itself as contrary to public policy, rather than because a particular provision of the insurance policy was contrary to public policy). Green argues, however, that she has not challenged the uninsured motorist provision of her policy on the basis that the clause itself violated public policy or legislative mandate, but rather that Hartford's actions in administering the policy violated the MVFRL.

The Third Circuit's decision in *State Farm Mut. Auto. Insurance v. Coviello,* 233 F.3d 710 (3d Cir.2000) (interpreting Pennsylvania law), is instructive on this specific point. In *Coviello,* State Farm filed a declaratory judgment action seeking a determination that the insured was not entitled to underinsured motorist coverage under her daughter's insurance policy because of the presence of a "family vehicle exclusion" clause in the policy. *Id.* at 712. State Farm argued that, despite the arbitration clause in the policy, the district court, rather than arbitration, was the proper forum to hear the claim because the suit involved an issue of public policy. *See id.* at 711–12.

Although it ultimately declined to decide the issue of which forum should hear the parties' dispute in the first instance,[14] the Third Circuit rejected the insured's contention that she was not, in essence, challenging the enforceability of the family vehicle exclusion on public policy grounds. Examining the claim in its essence, the Third Circuit reasoned that the only way the insured could succeed on her claim for benefits was if the family vehicle exclusion clause at issue was invalidated, and the only basis on which the clause could be invalidated under Pennsylvania law was if, "under the circumstances of [the] case, it violated public policy as expressed by the Pennsylvania MVFRL." *Id.* at 714.

Similarly, in the instant case, since the only way the arbitrators' decision to reform Green's policy to provide uninsured motorist limits equal to the limits of her bodily injury liability coverage can be sustained is if Hartford violated the legislative mandate of the MVFRL, then Green in essence and necessarily has challenged the uninsured motorist provision of her policy as contrary to legislative mandate. Under *Coviello,* therefore, the court concludes that because the issue here in essence and necessarily involves a challenge to a legislative mandate, no matter how artfully framed by Green, the court has the power to review the arbitrators' decision.

D. *Did Hartford Violate the Legislative Mandate Expressed in the MVFRL?*

Next, the court must decide whether the uninsured motorist provision of Green's policy is contrary to a legislative mandate contained in the MVFRL. In other words,

14. In *Coviello,* the Third Circuit recognized that the issue of whether a challenge to an insurance policy provision as contrary to public policy should be resolved by the courts, rather than by arbitration, is a "thorny issue" that has yet to be clearly decided by Pennsyl-

vania courts. *See State Farm v. Coviello,* 233 F.3d 710, 715–716 (3d Cir.2000). Because the court found that it lacked clear direction under Pennsylvania law on the issue, it deferred the issue to another day and decided the case on an alternative ground. *Id.* at 716.

the court must decide whether Hartford violated the MVFRL by failing to (1) notify Green of her right to elect uninsured motorist limits equal to her bodily injury liability limits when she was substituted as the sole named insured; and (2) obtain a written authorization from Green for lower uninsured motorist coverage limits (if she chose not to elect uninsured motorist limits equal to her bodily injury liability limits).

As laid out above, sections 1731(a) and 1734 of the MVFRL: (1) require an insurer to provide uninsured motorist coverage equal to the bodily injury coverage in its policies; and (2) allow a named insured to request, in writing, lower uninsured motorist coverage limits than his or her bodily injury liability coverage. *See Nationwide Ins. Co. v. Resseguie,* 980 F.2d 226, 230 (3d Cir.1992).

It is clear that under sections 1731 and 1734 of the MVFRL, at the time the policy is issued, a named insured must be given the option of electing uninsured motorist coverage "in amounts equal to or less than the limits of liability for bodily injury." §§ 1731, 1734. If the insurer fails to obtain a written authorization from the insured for lower uninsured motorist limits, then the insured's uninsured motorist coverage must be equal to the limits of liability for bodily injury under the insured's policy. *Id.* In other words, as the statute is written, unless the named insured requests in writing lower uninsured motorist coverage, the coverage defaults to the amount equal to the bodily injury liability limits under the policy. The question presented in the instant case is whether those statutory provisions are triggered when a named insured is later substituted under the policy.

Hartford claims, and the defendant does not contest,[15] that all of the requirements of the MVFRL were satisfied when the automobile insurance policy was issued to Green's former spouse. At issue, however, is whether, upon substituting Green as the sole named insured on the policy in 1997, Hartford was required under the MVFRL to notify Green that she could elect higher uninsured motorist limits, and to secure a written request *from Green* for uninsured motorist limits lower than her bodily injury liability limits. Green argues that under the MVFRL Hartford was required to do both. To the contrary, Hartford argues that neither the MVFRL nor Pennsylvania case law required it to do either.

 The MVFRL does not address this particular issue. Nor has the Pennsylvania Supreme Court spoken on it.[16]

**15.** Although the issue of whether defendant's former spouse (Walsh) properly waived his right to elect higher uninsured/underinsured motorist benefits was raised in the previous action, the contention that he did not has not been raised in this action. For that reason, the court's inquiry will be limited to whether the plaintiff violated the notification requirements of the MVFRL with respect to Green only.

**16.** The court is therefore called upon to predict how the Pennsylvania Supreme Court would decide the issue. In doing so, the court is to apply state law as interpreted by the state's highest court. *See Gares v. Willingboro Twp.,* 90 F.3d 720, 725 (3d Cir.1996). In the absence of guidance from the state's highest court, a federal court should refer to decisions of the state's intermediate appellate courts for assistance, attributing significant weight to the intermediate courts' decisions absent any indication that the highest state court would rule otherwise. *McKenna,* 32 F.3d at 825; *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273–74 (3d Cir.1985). Of course, the district court is bound by Third Circuit's interpretation of Pennsylvania law unless there has been a subsequent definitive ruling by the Pennsylvania Supreme Court. *See Rupert v. Liberty Mutual Ins. Co.,* 291 F.3d 243, 244 (3d Cir.2002) ("[W]e write in quicksand; once the Pennsylvania Supreme Court faces this question in another case [and resolves the issue], ... anything we write will disappear.").

One Third Circuit case, however, in all but one respect, appears indistinguishable from the instant case.

█ In *Nationwide Mutual Insurance Co. v. Buffetta*, 230 F.3d 634, 635 (3d Cir. 2000), Saviero Buffetta was originally the sole named insured under an automobile policy in which his wife, Rosetta Buffetta, was covered as a licensed driver. Prior to the couple's divorce, Mr. Buffetta signed a written authorization form electing lower uninsured motorist limits than the bodily injury liability limits under the policy. *Id.* at 636. Following the divorce, Rosetta Buffetta was substituted as the sole named insured under the policy. *Id.* However, she never signed a written authorization requesting lower uninsured motorist limits than her limits of liability for bodily injury. *Id.*

Less than two years after the substitution was made, Rosetta Buffetta's father, who lived in her house and was covered under the policy, was fatally injured in an accident with an uninsured driver. *Id.* Following the accident, Rosetta Buffetta (on behalf of her father's estate) made a claim under the policy for uninsured motorist benefits and sought a reformation of the uninsured motorist limits of her policy because she had not executed a writing requesting lower uninsured motorist limits at the time she became the sole named insured. *Id.* at 635–36.

The Third Circuit framed the issue as follows: "[whether] the failure of an insurer to obtain new uninsured motorist election forms upon the change of the named insured from the husband to the wife following divorce required the reformation of the uninsured motorist coverage limits to the higher liability limits of coverage." *Buffetta*, 230 F.3d at 637. The Court clearly and ambiguously answered the question in the negative, explaining:

> [T]he statute requires only that a waiver form be provided upon issuance of a policy. There is no statutory requirement that an insured be given a[n] [election form] without the insured's having requested one. The statute is written in permissive terms, leaving it to a named insured, who "may" request reduced coverage. The option exists to request such a[n] [election form] and, we submit, *Kimball* was decided on the basis that a later named insured, upon being added to the policy, could have notified the insurance company that she did not want to be bound by another's election of reduced coverage.

*Id.* at 641.[17]

The Third Circuit concluded in *Buffetta* that Rosetta Buffetta had had "ample op-

---

**17.** In reaching its holding in *Buffetta,* the Court of Appeals relied on a Pennsylvania Superior Court decision in *Kimball v. Cigna Ins. Co.,* which, after reviewing court of common pleas and federal court cases interpreting the writing requirement of the MVFRL, similarly held that a party who was added as a named insured after elections were taken by another named insured on the policy was nevertheless bound by the elections made in writing by the other named insured. *See Kimball v. Cigna Ins. Co.,* 443 Pa.Super. 143, 660 A.2d 1386, 1387–88 (1995). The *Kimball* court had relied, in part, on a case decided by the Common Pleas Court of York County which held that a husband-named insured's election of lower uninsured motorist coverage was binding on the wife, who was also a named insured. *See Liberty Mut. Fire Insur. Co. v. Lindsay,* 3 Pa. D. & C.4th 659 (Pa.Com. Pl.1989) (holding that "by electing to stay covered on a joint policy with her husband, a policy in which he elected lower limits, [the] wife thereby confirmed and ratified that decision to elect lower limits"). Finding that it was the name insured's obligation to act, if she desired higher uninsured motorist benefits than had already been elected, the *Kimball* court declined to reform the policy and essentially "do what [the insured] had not done for herself." *Kimball,* 660 A.2d at 1389.

portunity" to alter the terms of her uninsured motorist coverage if she had wanted to do so. *Id.* at 642. Not only had the policy been renewed at least three times since Rosetta Buffetta was substituted as the named insured on the policy, but she had received billing statements with coverage listings and had been paying lower premiums which reflected the lower uninsured motorist limits during that time. *Id.* at 637, 642. Under those circumstances, the Court found that Rosetta Buffetta was bound by the uninsured motorist limits elected by the original named insured under the policy. *Id.*

As in *Buffetta*, in this case, after Green was substituted for Walsh as the sole named insured on the policy, Green was not notified by Hartford of the availability of higher uninsured motorist coverage limits nor did she sign a written authorization requesting lower uninsured motorist coverage limits than her bodily injury liability limits. Nevertheless, as in *Buffetta*, she renewed the policy twice with the limits elected by Walsh, the original named insured, unchanged and paid the premiums. Applying *Buffetta* to the nearly identical factual circumstances of this case, the court finds that Hartford was not required to notify Green that she could elect uninsured motorist limits equal to her bodily injury liability limits, or to obtain a written authorization from Green requesting lower uninsured motorist limits. Once Green was substituted as the named insured on the policy, if she desired higher uninsured motorist limits, she was required to notify Hartford that she did not want to be bound by her former husband's election of lower uninsured motorist coverage limits. Not having done so, Green is bound by the

original named insured's election of lower uninsured motorist coverage.[18]

Green argues that an important distinction exists between *Buffetta* and the instant case in that, unlike the plaintiff in *Buffetta*, Green was not listed as a driver on her husband's policy nor was she married to or residing with Walsh (the original named insured) at the time he elected the lower uninsured motorist benefits. Rather, Green was added to the policy when she moved into the household four years later, after the election had been made by Walsh. The court finds that this factual distinction has no legal significance here.

Under MVFRL, as discussed above, once Green became a named insured, Hartford had no duty to notify Green, a subsequent named insured, of the availability of higher uninsured motorist coverage limits or to obtain a written request for those lower limits from Green. Rather, the burden was on Green, whether she was married to the named insured or not, and whether she resided in the household or not, to request an increase in the previously selected uninsured motorist limits, if she wished to do so. And similar to *Buffetta*, Green had "ample" opportunity (i.e., the policy was twice renewed and she paid the premiums) to notify Hartford that she did not want to be bound by her former husband's election of coverage but failed to do so. Under these circumstances, the court holds that Green is bound by the election of uninsured motorist coverage limits previously made by the original named insured (until such time she notifies Hartford she wishes to obtain higher limits), even though she was not a member of the household or named as an additional

---

18. Of course, the wisdom of this arrangement, i.e. essentially putting the burden on subsequent named insureds instead of on the insurer, could be questioned. However, this is a matter of legislative policy which the Third Circuit found was evident in the statutory language of the MVFRL and which a federal court is not to second guess. *Buffetta*, 230 F.3d at 641.

driver when the uninsured motorist coverage election was made.[19]

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

An appropriate order follows.

### ORDER

AND NOW, this ___ th day of March, 2004, it is hereby **ORDERED** that plaintiff's motion for summary judgment (doc. no. 6) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (doc. no. 8) is **DENIED.**

**AND IT IS SO ORDERED.**

### ORDER

AND NOW, this ___ th day of March, 2004, it is hereby **ORDERED** that defendant's motion to dismiss (doc. no. 4) is **DENIED as moot.**

**AND IT IS SO ORDERED.**

### JUDGMENT

AND NOW, this **16th** day of **March, 2004,** pursuant to the order of March 16, 2004 and the accompanying memorandum, it is hereby **ORDERED** that **JUDGMENT** is **ENTERED** in favor of plaintiff and against defendant.

**IT IS FURTHER ORDERED** that the arbitration award of May 1, 2003 in favor of Laverne Green is **VACATED.**

**IT IS FURTHER ORDERED** that the insurance contract between Hartford and Laverne Green entitle Green to no more than $15,000 per person?$30,000 per accident in uninsured motorist coverage.

**AND IT IS SO ORDERED.**

---

19. The court notes that even if it had found that Hartford violated the MVFRL, it is unclear whether under Pennsylvania law reformation of the insured's policy would be a valid remedy. *See Buffetta,* 230 F.3d at 638–39 (referencing the ongoing discussion of policy reformation and the MVFRL in Pennsylvania courts). As was the case in *Buffetta,* because the court concludes that there was no violation of the MVFRL, there is no need for the court to address this unsettled issue.